IN THE COURT OF CRIMINAL APPEALS
OF TEXAS
 

 
NO. PD-0446-13

 
 
 
RICARDO JOURDAN, Appellant
 
 v.
 
THE STATE OF TEXAS
 
 

 
ON STATE’S PETITION FOR DISCRETIONARY REVIEW
FROM THE FIFTH COURT OF APPEALS
DALLAS COUNTY

 
 
           Price, J., delivered the opinion of the opinion for a unanimous Court.
 
O P I N I O N
           The appellant was convicted of the offense of aggravated sexual assault, for which the
jury assessed a sentence of thirty-five years in the penitentiary. The Dallas Court of Appeals
reversed his conviction, however, holding that the appellant was egregiously harmed by a
jury charge at the guilt phase of trial that failed to require the jury to render a unanimous
verdict with respect to which of two theories of aggravated sexual assault the appellant’s
conduct satisfied.


 We granted the State’s petition for discretionary review in order to
address the court of appeals’s conclusions both that the jury charge was erroneous and that
any such error was egregiously harmful. We reverse.
FACTS AND PROCEDURAL POSTURE
Indictment, Voir Dire, and Jury Charge
           In order to fully address the issues in this case, it is useful to set out the language of
the indictment in haec verba. It begins:



On or about the 23rd day of September A.D., 2010 in the County of Dallas and 
. . . State [of Texas, the appellant] did unlawfully then and there intentionally
and knowingly cause contact and penetration of the female sexual organ of
CRYSTAL KEMP,


 hereinafter called the complainant, without the consent
of the complainant, by means of an object, to-wit: the sexual organ of [the
appellant], and, by acts and words, [the appellant] did place the complainant
in fear that death and serious bodily injury would be imminently inflicted on
CRYSTAL KEMP[.]




The indictment then continues with a second paragraph:
and further, [the appellant] did unlawfully then and there intentionally and
knowingly cause penetration of the female sexual organ of CRYSTAL KEMP,
hereinafter called the complainant, without the consent of the complainant, by
means of an object, to-wit: the finger of [the appellant], and by acts and words,
[the appellant] did place the complainant in fear that death and serious bodily
injury would be imminently inflicted on CRYSTAL KEMP[.]




Thus, the indictment alternatively charged the appellant with: (1) causing Kemp’s female
sexual organ to contact his own sexual organ (Indictment Paragraph 1) (Section
22.021(a)(1)(A)(iii)); (2) causing penetration of Kemp’s female sexual organ with his own
sexual organ (Indictment Paragraph 1) (Section 22.021(a)(1)(A)(i)); and (3) causing
penetration of Kemp’s female sexual organ with the appellant’s finger (Indictment Paragraph
2) (also Section 22.021(a)(1)(A)(i)).
           During voir dire, the prosecutor read both paragraphs of the indictment out loud to the
jury panel and then asked, “Anybody catch the difference between the two of them?” He
explained:
It was either the sexual organ of the offender or the finger of the
offender. Sexual organ of the defendant caused contact and penetration. 
You’re going to learn that’s going to be “or.” It can be either contact or
penetration. The finger has to penetrate the female sexual organ. With regards
to the penis, the penis has to contact or penetrate the sexual organ. It’s kind
of confusing. I kind of broke it down so you’ll see it this way, and it’ll be
easier to understand.
 
Two ways to prove this charge. If it’s the sexual organ, it can be
contact and penetration. But that’s going to be an “or,” you’re going to learn. 
And the finger, it’s just penetration.

After some dialogue with various veniremembers, the prosecutor summed up:
 
Okay. I think you-guys understand it then. That’s the difference. To
be blunt, the penis can either contact or penetrate the sexual organ; the fingers
have to penetrate.
 
Either/or they are punishable by the same amount. We can prove
either/or. It’s going to be based on the evidence. You’re going to go back
there and six of you may say I think the State proved its case beyond a
reasonable doubt in the first part; six of y’all may say I think they proved it in
the second part. The deal is, it’s got to be either/or.

Later, the prosecutor asked whether there were any questions before he turned to a discussion
of punishment issues, and the following colloquy ensued:
THE VENIREPERSON: To me there is like four parts there. Do all
four parts have to be proved?
 
[THE PROSECUTOR]: What do you mean?
 
THE VENIREPERSON: Well, the sexual organ with contact and
penetration. And there is the finger with -- are those two separate or are they
both together?
 
[THE PROSECUTOR]: Remember I said there are going to be two
theories of the indictment and it allows either/or? See how on this first one,
to-wit: the sexual organ of said defendant. So that relates to the first part;
sexual organ. And it’s contact or penetration. You see that; knowingly cause
contact and penetration?
 
THE VENIREPERSON: Yes.
 
[THE PROSECUTOR]: Then you go to the second one where we’re
talking about the finger of said defendant. And it just talks about penetration
with regards to the finger.
 
THE VENIREPERSON: And what I’m asking is, do both points need
to be proved within reasonable doubt?
 
[THE PROSECUTOR]: No. We have to prove one or the other.
 
THE VENIREPERSON: I gotcha (sic).
 
[THE PROSECUTOR]: And that will be given to you at the end. 
You’re going to have two separate application paragraphs where it’s either the
sexual organ of the defendant or the finger of said defendant. If it is the sexual
organ of the defendant, it would be contact or penetration. If it’s the finger,
it has to be penetration, beyond a reasonable doubt.

           But in fact, the jury charge at the guilt phase of trial contained only one application
paragraph, not two as the prosecutor had predicted during voir dire. That application
paragraph, to which the appellant made no jury unanimity objection,


 read:
If you find and believe from the evidence beyond a reasonable doubt
that the defendant, Ricardo Jourdan, on or about September 23rd, 2010, in
Dallas County, Texas, did unlawfully then and there intentionally or knowingly
cause contact or penetration of the female sexual organ of Crystal Kemp,
hereinafter called the complainant, without the consent of the complainant, by
means of an object, to-wit: the sexual organ of said defendant and, by acts or
words, said defendant did place the complainant in fear that death or serious
bodily injury would be imminently inflicted on Crystal Kemp, or defendant did
unlawfully then and there intentionally or knowingly cause penetration of the
female sexual organ of Crystal Kemp, hereinafter called the complainant,
without the consent of the complainant, by means of an object, to-wit: the
finger of the said defendant, and, by acts or words, said defendant did place the
complainant in fear that death or serious bodily injury would be imminently
inflicted on Crystal Kemp, you will find the defendant guilty of aggravated
sexual assault, as charged in the indictment. If you do not so find or if you
have a reasonable doubt thereof, you will find the defendant not guilty.

This application paragraph does not expressly require the jury, as a predicate to convicting
the appellant, to reach agreement with respect to whether he: (1) contacted Kemp’s sexual
organ with his own sexual organ (Section 22.021(a)(1)(A)(iii)); (2) penetrated Kemp’s sexual
organ with his own sexual organ (Section 22.021(a)(1)(A)(i)); or (3) penetrated Kemp’s
sexual organ with his finger (also Section 22.021(a)(1)(A)(i)).
 
The Evidence
           A native of El Salvador, Crystal Kemp was employed cleaning public libraries in
Dallas. At about 8:30 on the morning of September 23, 2010, she had just finished cleaning
one branch library and was about to depart for another when she discovered that she had
locked her keys in her car. She called her sister-in-law, Alma Giron, on her cell phone for
help. As she was talking to Giron on the phone, the appellant approached her to offer
assistance. Speaking very little English, Kemp handed her phone to the appellant to talk to
Giron, who explained Kemp’s plight. The appellant offered to help Kemp retrieve her keys,
but asked her to fetch him paper towels from inside the library. The appellant then followed
Kemp into the bathroom of the library, where, according to Kemp’s testimony, he sexually
assaulted and brutally beat her.
           Through an interpreter, Kemp testified that the appellant threw her to the floor of the
bathroom and took her clothes off. He then began to beat her, first “punching” her in the
face, and then kicking and stomping her. The appellant then took his own pants and
underwear off.
Q. What happened after that?
 
A. Then when he saw that his penis was not hard, he did like this with
his hand trying to get it hard.
 
Q. And was that -- for the record, did he masturbate?
 
A. Yes.
 
Q. So you said that he put his penis inside your vagina?
 
A. Yes.
 
Q. And his penis -- so his penis contacted and penetrated your vagina?
 
A. Yes.
 
Q. Then you said that he wasn’t fully erect?
 
A. Yes.
 
Q. And so when he masturbated, where was he?
 
A. He was sitting down.
 
Q. Was he right next to you?
 
A. Yes, he was next to me. He was kind of like in a crouching
position, and he was doing like this to his penis.
 
Q. He was masturbating.
 
A. Yes.
 
Q. And then did he get back on top of you?
 
A. Yes. He got on top of me again. His penis in his hand, like this.
 
Q. And did he penetrate you again?
 
A. That I don’t know, because at that point he hit me with a blow when
I was asking him not to do it.
 
Q. Do you think you lost consciousness at any point?
 
A. Yes.

Kemp did not expressly testify that the appellant penetrated her with his finger.
           Other testimony did suggest, however, that the appellant penetrated Kemp’s sexual
organ with a finger or fingers. The physician who examined Kemp when she was taken to
the emergency room testified that she told him that the appellant had penetrated her with his
“[d]igits” or “[f]ingers.” His written summary of his interview with Kemp even included the
notation: “No actual penis penetration; could not get hard.” But the hospital employee who
served as an interpreter for the doctor testified that Kemp told the doctor that the appellant
had “penetrated her with the aid of his fingers because he was not able to keep his erection.” 
He agreed with the prosecutor that Kemp told them that the appellant had penetrated her
vagina with “both” his penis and his fingers.
           A forensic biologist from Southwestern Institute of Forensic Sciences detected
seminal fluid on Kemp’s shirt and on her perineum—“the area between the genital area and
the anus”—but not in her vagina. Testing revealed that DNA in the seminal fluid matched
the appellant’s.
           Testifying on his own behalf, the appellant admitted that he had beaten Kemp in the
bathroom of the library, but he denied sexually assaulting her in any way. He denied that he
ever removed Kemp’s pants or that his semen “would have gotten on her vagina.” According
to the appellant’s account, Giron actually came to the library parking lot and persuaded Kemp
to offer the appellant oral sex in exchange for fifty dollars and his help in retrieving the car
keys. The appellant and Kemp entered a storage shed on the premises, but the appellant
ejaculated on Kemp’s shirt before she could even initiate the act agreed upon. Angry that
Kemp would not remit at least a portion of his fifty dollars, the appellant followed her into
the bathroom of the library where he lost his temper and beat her up. But he emphatically
denied having had “any kind of sex with her there in the bathroom[.]” Had the jury credited
the appellant’s account, it could not have rationally convicted him of aggravated sexual
assault—under any of the theories alleged in the indictment. 
Jury Argument
           In final argument at the guilt phase, the prosecutor harkened back to his earlier
assertions during voir dire with respect to jury agreement:
I also talked to you [during voir dire] about contact and penetration and
fingers and things like that. So now you know why we talk about this, and
now you know why I spent a majority of my time discussing the elements. It
was so you 12 citizens have a clear idea of what you’re about to take part in.
 
What I want to show you is page 3 of the charge. We talked in voir dire
about whether it could be one of two ways, whether it could be the penis or the
fingers.
 
On page 3, the application paragraph, it lays it out perfectly. If you’ll
notice, did unlawfully then and there knowingly cause contact -- which is the
first way -- or penetration of the female sexual organ of Crystal Kemp.
 
Penetration, the second way; hereinafter called the complainant, without
the consent of the complainant, to-wit: sexual organ of the defendant. Sexual
organ.
 
The third way -- and I talked to you about how in the application
paragraph when we were talking in voir dire, you’ll see the defendant caused
penetration of the sexual organ of Crystal Kemp. And I’m going to go down --
to-wit: the finger of said defendant.
 
So I just wanted to make it clear for you. Everybody could say, you
know what, I think the State proved it because the penis contacted the sexual
organ. Another four of you could say, I think the penis penetrated the sexual
organ of this victim. Another four could say, I know it was the fingers that
penetrated the complainant’s sexual organ.

Subsequently, the prosecutors urged the jury at several points during the balance of their
arguments to reject the appellant’s version, in which he denied that any sexual assault took
place, on the ground that the appellant was unable to explain how, if Kemp’s pants were
never removed, his semen could nevertheless have been deposited on her perineum. The jury
convicted the appellant of aggravated sexual assault “as charged in the indictment.”
On Appeal
           For the first time on appeal, the appellant argued that the trial court committed error
by allowing the jury to convict him without attaining unanimity with respect to what he
perceived to be two theories of aggravated sexual assault reflected in the indictment: (1)
aggravated sexual assault by means of contact/penetration of Kemp’s sexual organ with his
own sexual organ (Indictment Paragraph 1); and (2) penetration of Kemp’s sexual organ with
his finger (Indictment Paragraph 2). He argued that the two paragraphs alleged separate
offenses, not merely alternative manner and means of committing the same offense. Because
that error caused him egregious harm, he maintained, his conviction should be reversed under
Almanza v. State.



           In addressing this contention, the court of appeals began its analysis by determining
that the first paragraph of the indictment charged the appellant with aggravated sexual assault
under Section 22.021(a)(1)(A)(iii).


 The court of appeals next determined that the second
paragraph, by contrast, charged the appellant with aggravated sexual assault under Section
22.021(a)(1)(A)(i).


 Based upon these determinations, and on authority of this Court’s
holding in Vick v. State,


 the court of appeals concluded that the indictment alleged two
separate statutorily defined offenses, and held that the jury should have been required to
achieve unanimity with respect to at least one of those offenses before convicting.


 
Particularly in view of the prosecutor’s emphasis during his final argument that the jury need
not agree on which theory of the offense the appellant had committed, the court of appeals
concluded that the jury charge error caused the appellant egregious harm.


 
           We granted the State’s petition for discretionary review in order to address two
contentions. First, the State contends that the court of appeals was mistaken to hold that the
first paragraph of the indictment alleged aggravated sexual assault under Section
22.021(a)(1)(A)(iii). In the State’s view, the two paragraphs simply alleged different manner
and means by which the appellant committed aggravated sexual assault under the same
subsection of the statute, Section 22.021(a)(1)(A)(i)—that is to say, both paragraphs alleged
that the appellant penetrated Kemp’s sexual organ, but by different means, viz.: by his own
sexual organ and by his finger. Because the Legislature is indifferent with respect to the
specific means by which such penetration occurs, the State maintains, the court of appeals
erred to hold that the penetration by the appellant’s sexual organ and penetration by his finger
constituted discrete offenses for purposes of the jury unanimity requirement. Second, and
alternatively, the State contends that the court of appeals erred to focus so heavily on the
prosecutor’s final argument in concluding that any error in the jury charge caused the
appellant egregious harm and that, on the facts of this case there is no reasonable chance that
the jury failed to reach unanimity with respect to at least one of the alleged theories.
ANALYSIS
           Under state law, the jury must be unanimous in finding every constituent element of
the charged offense in all criminal cases.


 But the requirement of jury unanimity is not
violated by a jury charge that presents the jury with the option of choosing among various
alternative manner and means of committing the same statutorily defined offense.


 
“Therefore, different modes of commission may be presented in a jury instruction in the
disjunctive when the charging instrument, in a single count, alleged the different means in
the conjunctive.”



           In this case, we can identify at least three potential jury unanimity problems with the
jury charge. It authorized the jury to convict the applicant without discriminating whether
he:
1.contacted Kemp’s sexual organ with his own sexual organ versus
penetrated her sexual organ with his own;
 
2.penetrated Kemp’s sexual organ with his own sexual organ versus
penetrated her sexual organ with his finger; or
 
3.contacted Kemp’s sexual organ with his own sexual organ versus
penetrated her sexual organ with his finger.

The only argument that the appellant made on appeal was that jury agreement was required
with respect to the second of these scenarios—whether the appellant penetrated Kemp with
his own sexual organ or, instead, with his finger. He did not raise the first and third
scenarios. It was on the basis of the second scenario that the court of appeals reversed the
appellant’s conviction, holding that penetration by the appellant’s sexual organ and
penetration by his finger constituted separate offenses, requiring jury unanimity with respect
to one or the other.


 Because that was the basis for the court of appeals’s ruling, we will
address that scenario first.
1. Penile Penetration Versus Digital Penetration
           The State insists that the first paragraph of the indictment actually charged an offense
under Section 22.021(a)(1)(A)(i) rather than, as the court of appeals concluded, Section
22.021(a)(1)(A)(iii). Because the second paragraph also alleged an offense under Section
22.021(a)(1)(A)(i), the State maintains, the two paragraphs simply allege alternative manner
and means of committing the same statutorily defined offense—two ways of causing the
penetration of Kemp’s sexual organ. Thus, the State concludes, the court of appeals erred
to rely upon this Court’s opinion in Vick to conclude that the two paragraphs charge discrete
statutory offenses, requiring jury unanimity.
           We think the State is partly correct. Removing the reference to “contact” from the
first paragraph of the indictment, it would constitute a pure allegation, under Section
22.021(a)(1)(A)(i), that the appellant penetrated Kemp’s sexual organ with his own sexual
organ. In that event, the question would boil down to whether the State is correct that
alleging two ways in which that penetration was accomplished (by the appellant’s sexual
organ, in Paragraph 1; by his finger, in Paragraph 2) constitutes but two alternative ways of
alleging the same offense under Section 22.021(a)(1)(A)(i), thus creating no jury unanimity
requirement. We agree with the State that the first paragraph of the indictment does allege
an offense under Section 22.021(a)(1)(A)(i), and that, to that extent, it alleges the same
statutorily defined offense as the second paragraph, albeit a different manner and means.
           In Vick, we held that allegations of aggravated sexual assault under different
subsections of Section 22.021(a)(1)(B) of the Penal Code constituted discrete statutorily
defined offenses, and that, for double jeopardy purposes, Vick could be prosecuted for both
offenses even though he had committed those discrete offenses (as did the appellant in this
case) in the course of the same transaction.


 Thus, we concluded that it was permissible for
the State to prosecute him successively for aggravated sexual assault under both Section
22.021(a)(1)(B)(i) (causing the penetration of a child’s sexual organ by his own) and Section
22.021(a)(1)(B)(iii) (causing the sexual organ of a child to contact his mouth).


 The
specificity reflected in the different subsections of the statute, we reasoned, “reflects the
[L]egislature’s intent to separately and distinctly criminalize any act which constitutes the
proscribed conduct.”


 Moreover, “the Legislature intended to punish separate acts, even
though such acts might be in close temporal proximity; that is, the Legislature, through the
language of the statute, has rejected grouping aggravated sexual assaults by ‘transaction.’”



           Here, of course, unlike in Vick, the allegations of penile and digital penetration allege
conduct that is proscribed by the same subsection of Section 22.021. That will not always
make a difference. We have made clear that discretely proscribed conduct even within the
same subsection of a penal statute may still serve to delineate separately actionable offenses
for both double jeopardy and jury unanimity purposes when they are “specified within
separate and disjunctive phrases in the same subsection.”


 But Section 22.021(a)(1)(A)(i)
does not disjunctively specify different types of conduct, as was true of the various
subsections of Section 22.021 that were at issue in Vick. Instead, Section 22.021(a)(1)(A)(i)
simply proscribes the same type of conduct—“penetration” (albeit of more than one
statutorily specified orifice)—perpetrated “by any means.”
           The number of discrete statutorily defined offenses that may be embraced within a
single penal section is a function of legislative intent,


 and in examining statutory language
for legislative intent, we inquire into the “gravamen” of the offense.


 Utilizing the so-called
“eighth-grade grammar” test for discerning the gravamen of a given offense,


 we note that
Section 22.021(a)(1)(A)(i) supplies a noun (“person”), a main verb (“causes”) and direct
object (“penetration”), plus three adverbial phrases (“of the anus or sexual organ”/“of another
person”/“by any means”). Ordinarily, we have not regarded adverbial phrases as “elemental”
for jury unanimity purposes.


 But here, the first two adverbial phrases provide a level of
specificity that arguably serves to define discretely actionable units of prosecution even
within the same statutory subsection. Accordingly, a defendant may be susceptible to
prosecution under Section 22.021(a)(1)(A)(i) for as many “persons” as he penetrated during
the same transaction, and for as many statutorily delineated orifices as the evidence may
show he penetrated. The last adverbial phrase in the subsection, on the other hand, is non-specific, and we agree with the State that this signals a legislative indifference to how the
penetrations may be accomplished. Thus defined, the gravamen of the subsection is
penetration, not the various and unspecified “means” by which that penetration may be
perpetrated, which are not elemental. We conclude that, in this case, the penetration of a
single orifice (the sexual organ) of the one victim (Kemp) during the same transaction
constituted but one offense under Section 22.021(a)(1)(A)(i), regardless of the various
manner and means by which the evidence may show that the penetration occurred. The jury
was not required to reach unanimity with respect to whether the appellant penetrated Kemp
with his penis or his finger during that transaction. The court of appeals erred to conclude
otherwise.
2. Penile Contact Versus Penile PenetrationThe court of appeals no doubt believed that the first paragraph (Indictment Paragraph
1) charged aggravated sexual assault under Section 22.021(a)(1)(A)(iii) because of the
reference there to the appellant having caused contact with, not just penetration of, Kemp’s
sexual organ. It is certainly true that the first paragraph may be read to allege that the
appellant caused her sexual organ to contact his own sexual organ, which would constitute
a violation of Section 22.021(a)(1)(A)(iii). To the extent that the first paragraph thus seems
to have alleged an offense under both Section 22.021(a)(1)(A)(i) and Section
22.021(a)(1)(A)(iii),


 it presented the jury with the option of convicting the appellant of
aggravated sexual assault if he caused the penetration of her sexual organ with his own
sexual organ or, alternatively, if he caused her sexual organ to contact his own. Because
these allegations involve distinct statutorily defined types of conduct (“penetration” versus
“contact”) that are proscribed by different subsections of the aggravated sexual assault
statute, a substantial argument can be made that they constitute two offenses in contemplation
of our holding in Vick.
           But the appellant did not make this argument in the court of appeals. Even had he
raised it there and reiterated it in this Court, we would conclude that, on the facts of this case,
there was no lack of jury unanimity at least with respect to contacting, as opposed to
penetrating, Kemp’s sexual organ. In the single transaction presented in this case, the
appellant cannot have penetrated Kemp’s sexual organ without having first contacted it. 
Every juror who found penetration would by necessity have also found contact, and there
could be no lack of agreement, therefore, that the appellant at least caused Kemp’s sexual
organ to contact his own.


 That being the case, even assuming (without deciding) that it was
error not to charge the jury that it must choose between the separate statutory offenses of
penetrating Kemp’s sexual organ, as opposed to merely contacting it, with his own sexual
organ, there cannot have been egregious harm under Almanza.
3. Penile Contact Versus Digital Penetration
           The appellant’s jury could have convicted him without reaching agreement with
respect to whether he caused Kemp’s sexual organ to contact his own (Indictment Paragraph
1) or, alternatively, penetrated her sexual organ with his finger (Indictment Paragraph 2). 
These two theories of aggravated sexual assault almost certainly constitute separate offenses
in contemplation of Vick, since they stem from separate subsections of the statute and
constitute discretely specified conduct by which aggravated sexual assault may be committed. 
But the appellant did not complain on appeal of this potential violation of his right to jury
unanimity either. Had he raised it on appeal, and assuming that we were to determine that
jury charge error occurred, the next step would be to assay the record for egregious harm.
           In a case involving unobjected-to jury unanimity error, we have said:
Jury-charge error is egregiously harmful if it affects the very basis of
the case, deprives the defendant of a valuable right, or vitally affects a
defensive theory. In examining the record to determine whether jury-charge
error is egregious, the reviewing court should consider the entirety of the jury
charge itself, the evidence, including the contested issues and weight of the
probative evidence, the arguments of counsel, and any other relevant
information revealed by the record of the trial as a whole.




In finding egregious harm from the failure of the jury charge to require agreement with
respect to whether the appellant committed penile versus digital penetration, the court of
appeals emphasized the State’s insistence during jury argument that unanimity was not
required—a carryover from voir dire. That is obviously an important consideration in any
analysis of egregious harm vel non,


 but it is not the only consideration. It is also relevant
to the egregious harm analysis to inquire about the likelihood that the jury would in fact have
reached a non-unanimous verdict on the facts of the particular case.



           We have already discounted the possibility of egregious harm with respect to penile
contact versus penile penetration because contact is subsumed by penetration, and every juror
would have, of necessity, at least found contact. In that context, there is no logical possibility
of non-unanimity with respect to at least one of the theories of the offense—penile contact. 
But digital penetration does not similarly subsume penile contact. We are unable to say,
therefore, that the jury necessarily reached unanimity with respect to at least one of these
theories of aggravated sexual assault. Nevertheless, on the facts of this particular case, the
likelihood of non-unanimity is exceedingly remote.
           The appellant’s primary defensive posture, as evidenced by his own testimony, was
that no sexual assault took place. Having convicted the appellant, the jury obviously rejected
his version of the event. Whether or not the jury believed the appellant’s exculpatory
testimony was not a function of its ability to agree whether he penetrated her sexual organ
digitally or contacted it with his penis. Thus, any error in the jury charge in failing to require
such agreement did not serve to undermine the particular defense he chose to pursue. Did
it, nonetheless, affect the very basis of the case or deprive him of a valuable right?
           Discounting the appellant’s exculpatory testimony, the evidence shows without
contradiction that the appellant at least caused Kemp’s sexual organ to come into contact
with his own. Kemp testified that the appellant’s penis both contacted and penetrated her
vagina, but said nothing from the witness stand with respect to digital penetration. When the
appellant had trouble maintaining an erection, she told the jury, he masturbated himself with
his hand. He then got back on top of her with “[h]is penis in his hand” and penetrated her
again. The treating physician, by contrast, understood Kemp to tell him that the appellant did
not penetrate her sexual organ with his penis, but that he did penetrate it with his fingers. But
the interpreter understood Kemp differently, testifying that she claimed that the appellant
penetrated her with “both” his fingers and his penis, using his fingers as an “aid . . . because
he was not able to keep his erection.” One way or another, the evidence shows, he managed
to deposit his semen on Kemp’s perineum.
           Given this state of the record, there was some evidentiary basis from which the jurors
might have disagreed whether the appellant penetrated Kemp’s vagina with his penis, his
finger, neither his penis nor his finger, or both his penis and his finger. But, having rejected
the appellant’s wholly exculpatory account, the collective jurors would have had no reason
to doubt that, whether the appellant actually penetrated Kemp’s vagina with either his penis
or his finger, he was at least attempting to penetrate her vagina with his penis, and using his
finger or fingers to facilitate that penile penetration. The evidence presented no rational basis
for any juror who found that the appellant actually penetrated Kemp’s sexual organ with his
finger during this encounter to doubt that he also caused his penis at least to contact her
sexual organ, even if he was unable to penetrate it. There was no evidence to the contrary. 
Any juror who voted to convict the appellant on the facts of this case under the theory that
he penetrated her vagina with his finger must, at a minimum, have agreed that the appellant
also contacted Kemp’s sexual organ with his penis.
           Under these circumstances, and notwithstanding the prosecutor’s insistence that
unanimity was not required, we hold that, on the particular facts of this case, the failure of
the trial court to expressly require jury unanimity with respect to digital penetration versus
penile contact, assuming it was error, neither affected the very basis of the case nor actually
operated to deprive the appellant of his valuable right to a unanimous jury. The appellant did
not suffer egregious harm.
CONCLUSION
           Accordingly, we reverse the judgment of the court of appeals. Because the court of
appeals addressed and rejected all of the appellant’s remaining points of error on appeal,



we affirm the judgment of the trial court.
 
DELIVERED:         April 2, 2014
PUBLISH